UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEFAN LANG, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:08CV1805 CDP |
| ) | |
| MICHAEL CHERTOFF, et al., ) | |
| ) | |
| Respondents. ) | |

# MEMORANDUM AND ORDER

Stefan Lang is a German citizen who entered this country under the Visa Waiver Program (VWP), which authorizes citizens of certain countries to enter the United States without a visa for a term no longer than 90 days.[1] While here, he met and married Melva Dorsey, a United States citizen, and they had a child together. Dorsey and Lang filed the paperwork necessary to initiate the process for adjusting Lang's status to that of a lawful permanent resident, a status granted to the non-citizen spouses of United States citizens. However, Dorsey and Lang's marriage began to deteriorate, and Dorsey withdrew Lang's application for adjustment. The Immigration and Naturalization Service[2] subsequently denied

---

[1]As discussed below, in exchange for this procedural benefit VWP entrants like Lang waive their right to challenge their removal from this country on any basis other than asylum.

[2]The INS has seen been abolished and its functions transferred to the Department of Homeland Security. See Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135 at

Lang's application because it was withdrawn by Dorsey. The INS did not seek to immediately remove Lang from the United States following the denial of his application, and Lang did not re-file his application. Instead, Lang remained in this country, working and raising his family. Lang and Dorsey divorced in 2004. Lang was awarded joint custody of his daughter, and he is also the primary caregiver for Dorsey's daughter from a prior relationship.

In August of this year, the United States Immigration and Customs Enforcement (ICE), an agency within the Department of Homeland Security (DHS), issued an Order of Deportation, finding that Lang remained in the United States beyond his authorized period of stay under the VWP. ICE scheduled Lang's removal on November 24, 2008. On November 21, 2008, Lang filed the instant action seeking an order staying his deportation and compelling DHS to issue a Notice to Appear, which would initiate removal proceedings. Lang wants to initiate removal proceedings so that he can have a hearing before an Immigration Judge (IJ),[3] a procedure he is not entitled to under the VWP. See 8 C.F.R. § 217.4(b)(1) and § 1208.2(c)(1)(iv).[4] On November 21, 2008, following

---

2142 (2002).

[3]Once before an IJ, Lang would then file an application for cancellation of removal.

[4]Removal of an alien such as Lang under the VWP "shall be effected without referral of the alien to an immigration judge for a determination of deportability, except . . . [for] an

an emergency hearing, I issued a temporary restraining order enjoining and restraining defendants from removing Lang from the country pending a hearing on the merits of his petition for mandamus.

I held a hearing on the merits of Lang's mandamus petition on December 1, 2008. Lang appeared at the hearing and was represented by counsel. In addition to his own testimony, Lang also presented the testimony of four witnesses. Defendants were present for the hearing through counsel but did not call any witnesses to testify. Following the taking of evidence, I heard arguments from counsel concerning jurisdictional issues, and well as on the merits of the underlying petition. After careful consideration of the parties' briefs and documentary evidence, the testimony presented at the hearing, and the arguments of counsel, I must deny the petition for lack of jurisdiction. Were I free to decide whether Lang – by all accounts a devoted father – should be granted lawful permanent resident status, I might well conclude that he could remain in the United States. That decision, however, cannot be made by me. This is a court of limited jurisdiction, and I cannot exercise jurisdiction where Congress has not

---

alien . . . who applies for asylum in the United States . . . ." 8 C.F.R. § 217.4(b)(1). Further, under 8 C.F.R. § 1208.2(c)(1)(iv), an alien who was admitted under the VWP and remained longer than authorized is not entitled to removal proceedings under 8 U.S.C. § 1229a, which sets out the procedures an immigration judge must follow in adjudicating an alien's removability.

provided it. In this case, I must enforce the VWP's valid waiver provisions that apply to Lang and preclude him from obtaining the relief he seeks. My analysis follows.

## Relevant Background Facts

Lang first entered the United States under the VWP in 1997 to visit his mother, who is married to a United States citizen. While he was here, he met and fell in love with Melva Dorsey. Lang returned to Germany and came back to the United States again under the VWP on June 18, 1998. Under the terms of the VWP, Lang was authorized to stay in the United States until September 17, 1998. On September 16, 1998, Lang and Dorsey were married. After the marriage, Dorsey filed with the INS a Form I-130, Petition for Alien Relative, on behalf of Lang. In conjunction with Dorsey's Form I-130, Lang submitted his adjustment of status application by filing a Form I-485, Application to Register Permanent Residence of Adjust Status. Both forms indicate September 16, 1998 as the date they were signed by Dorsey and Lang. Although Lang's petition alleges that the forms were filed before September 17, 1998, Lang could not testify as to the date that they were actually filed with the INS. Instead, he testified that they hired a lawyer to submit the applications on their behalf. The forms themselves indicate that they were received by the INS on September 22, 1998. The lawyer who filed

the pages did not testify, either by affidavit or otherwise, and Lang did not offer any other evidence, either through testimony or exhibits, as to the date the forms were actually filed with the INS. Thus, the only evidence in the record is that Lang's adjustment of status application was filed with the INS on September 22, 1998, five days after his 90-day VWP period expired.

The INS interviewed Lang in connection with the adjudication of his adjustment of status application on April 28, 1999. Dorsey's I-130 form was approved on February 11, 2000. Lang and Dorsey's daughter was born on June 10, 1999. Lang testified that his marriage began to deteriorate after his daughter was born and that Dorsey suffered from depression and at times required hospitalization for her illness. At some point Dorsey withdrew the Form I-130 she filed on behalf of Lang by completing what appears to be a pre-printed INS form. This form states as follows:[5]

> TO WHOM IT MAY CONCERN:
>
> RE: <u>I-130 for Stefan Lang</u>
>
> My name is <u>Melva J. Lang</u>. I am a citizen of <u>United States</u>  Date of Birth <u>10/12/74</u> On <u>9/16/98</u> I filed a petition on behalf of <u>Stefan Lang</u> Country of Birth <u>Germany</u> Date of Birth <u>5/24/71</u>

---

[5] The handwritten responses and signatures are underlined.

> I have attached a copy of the approval notice (Form I-797, Form I-171 or other proof of filing). Yes  No x
>
> I NOW WISH THE PETITION TO BE WITHDRAWN BECAUSE:
>
> <u>Stephan is not living at home with me and his daughter. He does not want to be married and has been verbally and physically abusive to me. But he still expects me to the leave the petition standing.</u>
>
> Signature: <u>Melva J. Lang</u>
>
> Address: <u>[illegible]</u>
>
> Witnessed By: <u>[illegible] Watson</u>
>
> Address:

This form is file-stamped "Received" and indicates the date of January 3, 1999. At the hearing, I asked defense counsel whether this form was really filed on January 3, 2000, and mistakenly date-stamped 1999 because it was submitted just after the new year began and Lang's daughter was not yet born on January 3, 1999, but counsel could not provide the answer to the question or produce any witness who could answer my question, either. Dorsey did not testify at the hearing, and Lang testified that Dorsey never told him she withdrew the I-130, so the only evidence in the record indicates that Dorsey withdrew the I-130 on January 3, 1999. Apparently due to "staffing issues," Dorsey's withdrawal request

was not processed by the INS until February 6, 2002, when the I-130 approval was automatically revoked pursuant to 8 C.F.R. § 205.1(a)(3)(i)(A).[6] The next day, on February 7, 2002, the INS denied Lang's application for adjustment of status because "he was no longer the beneficiary of an approved visa petition" and was therefore ineligible to adjust his status to a lawful permanent resident. The INS decision was sent to Lang at his mother's house,[7] and at the hearing he did not deny receiving it.

Lang did not contact the INS after receiving the decision denying his application for adjustment, and he did not depart the United States. Instead he has lived continuously in the United States since 1998. Lang and Dorsey divorced in late 2003 or early 2004. Lang and Dorsey were awarded joint custody of their daughter, but she lives with Lang and visits her mother occasionally. Dorsey's daughter from a prior relationship also lives with Lang and is being raised by Lang as his daughter. She considers Lang her father, although Lang has not adopted her and has no custodial rights over her. All the evidence demonstrates that Lang is a

---

[6]That regulation provides in pertinent part that "the approval of a petition . . . is [automatically] revoked as of the date of approval . . . if the beneficiary is an applicant for adjustment of status to that of a permanent resident, before the decision on his . . . adjustment application becomes final: upon written notice of withdrawal filed by the petitioner . . . with any officer . . . who is authorized to grant or deny petitions."  8 C.F.R. § 205.1(a)(3)(i)(A).

[7]Lang testified that he has lived with his mother and step-father periodically since arriving in the United States.

responsible father who loves his children and takes good care of them.  Lang said it would be difficult for him to take the children with him to Germany because he would be "starting over."  The children speak and understand some German, but are not fluent.  Lang did not know whether they could attend an English-speaking school in Germany.  He also testified that it would be hard for him to see the children regularly if he were sent back to Germany and they remained here because it would be very expensive for them to fly to Germany.  Dorsey just gave birth to her third child and apparently cannot care for all three children.

Lang's mother bought the house where Lang and the girls live and sees the children every day.  Lang's mother and step-father also help support Lang and the children financially.  She has a nineteen-year old daughter living at home and said it would be difficult for her to take care of Lang's children if he were sent back to Germany, but she and her husband would take care of them if she had to do it.  Lang's step-father testified similarly.  Dorsey's father also testified at the hearing on behalf of Lang.  He stated that he sees the children regularly and has a good relationship with them and would help care for them if circumstances forced him to do so.  Therefore, although Lang's petition alleges that his children would likely end up in foster care if Lang is sent back to Germany, the evidence presented by Lang at the hearing belies this assertion.  Although I do not doubt that hardships

would be imposed upon Lang, the children, and his family members if Lang is deported, I do not believe that these hardships include foster care for his daughters among strangers. They have several adult relatives who obviously care about them and have the ability to care for them if necessary.

On August 13, 2008, ICE issued an Order of Deportation finding that Lang violated the condition of admission under section 217 of the Immigration and Naturalization Act (INA). The Order of Deportation states that Lang entered the United States pursuant to 8 U.S.C. § 1187, and because he remained in the United States beyond his authorized period of stay, which was in violation of the terms and conditions of his entry into the United States under the VWP, he was subject to removal under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). ICE subsequently scheduled Lang's removal for November 24, 2008.

On November 20, 2008, Lang's attorney of record sent ICE a letter requesting prosecutorial discretion in granting Lang deferred action on his removal order and allowing him to remain in the United States under an Order of Supervision "for humanitarian reasons." Lang requested a stay of removal pending review of his request for deferred action of the removal order. Lang's attorney also filed an Application for a Stay of Deportation of Removal, ICE Form I-246, requesting a 60-day stay of removal and the issuance of a Notice to Appear

commencing removal proceedings against Lang under the authority of INA section 240. ICE had not acted on the request for deferred action when this action was filed.

## Discussion

The primary legal issue for me to decide is whether Lang is subject to the no-contest clause of the VWP – which means that he has no right to challenge his removal on any basis other than asylum – or whether the no-contest clause no longer applies to Lang because Dorsey and Lang filed I-130 and I-485 forms back in 1998. If the no-contest clause of the VWP applies, I have no jurisdiction over this case and Lang's mandamus petition must be dismissed. As I stated at the beginning of this opinion, the issue that is *not* before me is whether Lang should be granted permanent resident status.

The VWP authorizes the government to waive visa requirements for citizens of certain favored countries. See 8 U.S.C. § 1187. Under the terms of the VWP, as a condition of entering the United States without a visa, Lang agreed to leave within 90 days and, under the no-contest clause, agreed to waive any right: "(1) to review or appeal under this chapter of an immigration officer's determination as to the admissibility of the alien at the port of entry into the United States, or (2) to contest, other than on the basis of an application for asylum, any action for

removal of the alien." 8 U.S.C. § 1187(b).[8] The Ninth Circuit Court of Appeals describes the no-contest clause as "the linchpin of the program, which assures that a person who comes here with a VWP visa will leave on time and will not raise a host of legal and factual claims to impede removal if he overstays." Handa v. Clark, 401 F.3d 1129, 1135 (9th Cir. 2005). Congress enacted the VWP to promote better relations with this country's allies, and to facilitate travel between countries with a low incidence of immigration abuse. Itaeva v. I.N.S., 314 F.3d 1238, 1241 (10th Cir. 2003).

"Although the no-contest clause was designed generally to limit the rights of alien visitors and prevent them from challenging their removal, the INA does not entirely preclude such visitors from seeking to extend their stay." Freeman v. Gonzales, 444 F.3d 1031, 1034 (9th Cir. 2006). As the government concedes, a VWP visitor such as Lang may seek to adjust his status to that of a permanent resident through the immediate relative petition, the procedure invoked by Lang and Dorsey. Section 204 of the INA, 8 U.S.C. § 1154 (2007), provides United States citizens and alien spouses, under certain conditions, the right to petition the

---

[8]To enter the United States under the VWP, Lang signed a Form I-94W and agreed to its terms. The I-94W waiver form described the conditions of Lang's entry, including the 90-day time limit, and the no-contest clause. The I-94W form also included a certification that Lang read and understood the conditions of his admission to the United States under the VWP.

Attorney General for classification of an alien as an "immediate relative" by filing a Form I-130 petition on behalf of the spouse. See 8 U.S.C. § 1151(b)(2)(A)(I), 1154(a)(1)(A)(i), 1255(a). Certain classes of non-immigrants may petition the Attorney General for adjustment of status to that of lawful permanent resident, provided that "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to [him] at the time [his] application is filed." 8 U.S.C. § 1255(a). Lang petitioned for adjustment of status by filing a Form I-485.

According to Lang, once he filed his adjustment of status application, he became entitled to the procedural guarantees of the "adjustment of status regime"[9] and was no longer subject to the VWP's no-contest clause. The primary procedural guarantee Lang seeks here is a hearing before an Immigration Judge prior to removal. In support of this argument, Lang relies primarily on the Ninth Circuit Court of Appeal's decision in Freeman v. Gonzales, 444 F.3d 1031 (9th Cir. 2006). In Freeman, the Ninth Circuit held that "once a VWP visitor properly

---

[9]The procedural regulations governing adjustment of status applications are found at 8 C.F.R. § 245.2 and 8 C.F.R. § 1245.2. 8 C.F.R. § 1245.2(a)(5)(ii) provides that "no appeal lies from the denial of an application [for adjustment of status] by the director," but the applicant may renew the application in removal proceedings before an IJ.

files an adjustment of status application, the VWP no-contest clause does not deprive the visitor-applicant of the procedural guarantees afforded any applicant seeking adjustment of status." Id. at 1035. Like Lang, Mrs. Freeman entered the United States on a VWP and, while here, met and married a United States citizen. Id. at 1032. After their marriage but before Mrs. Freeman's 90-day visa waiver expired, the Freemans filed a petition for immediate relative (Form I-130) and an application to adjust Mrs. Freeman's status (Form I-485). Id. at 1033. While the application was pending and the Freemans were still married, Mr. Freeman was killed in an automobile accident. Id. DHS subsequently decided Mrs. Freeman no longer qualified for an adjustment of status because she was no longer a "spouse." Id. The Ninth Circuit noted that "notwithstanding the REAL ID Act's limitation of appellate review, we conclude that we have jurisdiction to review Mrs. Freeman's purely legal claim that the district director violated her due process rights by improperly interpreting § 1151(b)(2)(A)(i) to determine that she was no longer the spouse of a U.S. citizen and therefore not entitled to adjustment of status." Id. at 1037 (internal quotation marks omitted). The appellate court went on to hold that "an alien widow whose citizen spouse filed the necessary immediate relative petition form but died within two years of the qualifying marriage nonetheless remains a spouse for purposes of 8 U.S.C. §

1151(b)(2)(A)(i), and is entitled to be treated as such when DHS adjudicates her adjustment of status application." Id.

Even if I were persuaded by the Ninth Circuit's reasoning in Freeman, I could not apply it here to grant Lang the relief he seeks. This case is distinguishable from Freeman because, unlike Mrs. Freeman, Lang did not properly file his adjustment of status application before his 90-day visa waiver expired. Instead, Lang's adjustment of status application was filed with the INS on September 22, 1998, five days *after* his 90-day VWP period expired. This critical distinction makes Lang's case analogous to Ferry v. Gonzales, 457 F.3d 1117 (10th Cir. 2006), not Freeman. In Ferry, the Tenth Circuit Court of Appeals flatly rejected Mr. Ferry's argument that he was no longer subject to the no-contest clause of the VWP because he filed for adjustment of status after his 90-day waiver period expired:

> We hold that an alien who overstays his authorized time under the VWP and files for an adjustment of status after he has overstayed, but before the issuance of a removal order, has waived his right to contest a subsequent removal order through a renewed application for adjustment of status, or to otherwise seek review of the previously filed adjustment of status.

Id. at 1128. The court reasoned that "to conclude otherwise would frustrate Congress' intent in establishing the VWP, and would be contrary to the statutes

and regulations governing an alien's right to an adjustment of status." Id. In its decision, the Tenth Circuit distinguished Freeman on the ground that Mrs. Freeman had filed her application for adjustment of status before her 90-day VWP visa expired, observing that "during the first 90 days during which an alien is lawfully present in the United States under the Visa Waiver Program, the alien may apply for adjustment of status without any conflict arising between the two statutes governing adjustment of status and the VWP waiver provision." Id. at n.15 (citing Schmitt v. Maurer, 451 F.3d 1092, 1096-97 (10th Cir. 2006)) (internal quotation marks omitted). In reaching its decision, the appellate court reasoned that its interpretation of the statutory framework was consistent with the regulations governing the VWP:

> To be sure, 8 C.F.R. § 1245.2(a)(5)(ii) provides that an alien may not appeal from the DHS district director's denial of an application for adjustment of status. The regulation states that the alien instead "retains the right to renew his or her application in [removal] proceedings under 8 CFR part 240." Id. Ferry's apparent right to renew his application for adjustment of status in removal proceedings, however, is eliminated by the last sentence in 8 C.F.R. § 1245.2(a)(5)(ii): "Nothing in this section shall entitle an alien to [removal] proceedings under section 240 of the Act [8 U.S.C. § 1229a] who is not otherwise so entitled." Id. Indeed, the regulations classify an alien who was admitted to the VWP and has overstayed his visa as an "alien[ ] not entitled to [removal] proceedings under section 240 of the Act [8 U.S.C. 1229a]." 8 C.F.R. § 1208.2(c)(1)(iv); see also 8 U.S.C. § 1229a(a)(3) (" *Unless otherwise specified in this Act,* a [removal] proceeding under this section shall

be the sole and exclusive procedure for determining whether an alien may be ... removed from the United States.") (emphasis added); Handa v. Clark, 401 F.3d 1129, 1134 (9th Cir. 2005) (stating that " § 1187(b) does appear to otherwise specify"). Further, the regulations state that the scope of review in proceedings conducted under 8 C.F.R. § 1208.2(c)(1) "shall be limited to a determination of whether the alien is eligible for asylum or withholding or deferral of removal, and whether asylum shall be granted in the exercise of discretion." 8 C.F.R. § 1208.2(c)(3)(i); see also 8 C.F.R. § 217.4(b)(1) (providing that the removal of an alien admitted under the VWP "shall be effected without referral of the alien to an immigration judge for a determination of deportability, except ... [for] an alien who applies for asylum in the United States").

Ferry, 457 F.3d at 1127 -1128 (emphasis in original).

Following the Tenth Circuit's reasoning, the Ninth Circuit has recently made clear that its decision in Freeman only applies if the alien's adjustment of status application is filed before the 90-day VWP period expires. In Momeni v. Chertoff, 521 F.3d 1094, 1095 (9th Cir. 2008), Mr. Momeni, a German citizen, entered the United States under the VWP, and after his 90-day VWP period expired, he married a United States citizen and applied for adjustment of status. The Ninth Circuit, in a brief opinion, noted that because Mr. Momeni did not seek asylum from Germany, "that basically, is the end of the case." Id. at 1096. The Ninth Circuit distinguished Mr. Momeni's case from Mrs. Freeman's case on the ground that he married and applied for adjustment of status after the 90 days

expired.  Id.  For these reasons, Momeni did not fall "within [the] narrow exception" created by Freeman.  Id.  The Ninth Circuit wryly observed that "if a Visa Waiver Program entrant does not leave when the 90 days expires, life in the United States goes on.  It may go on for many years before the alien comes to the government's attention.  There are legal means by which aliens may marry United States citizens, obtain visas, and obtain adjustment of status, but overstaying the 90 days for tourists in the Visa Waiver Program is not among them."  Id.  The appellate court concluded:

> We agree with the Tenth Circuit[10] . . . that to allow an adjustment of status petition after the 90 days has expired would create an avoidable conflict between the adjustment of status statute and the no contest statute . . . .  An alien who comes to the United States under the Visa Waiver Program generally cannot avoid his or her waiver of the right to contest removal (other than on the basis of asylum).  Freeman is a narrow exception to the rule, but Momeni doesn't fall within this exception.

Id.

Just like Mr. Momeni and Mr. Ferry, Lang does not fall within Freeman's narrow exception to the rule.  While I may sympathize with the situation facing Lang and his family, I am obligated to decide this case based on the law.  Lang

---

[10]The Ninth Circuit cites the Tenth Circuit's decision in Schmitt, 451 F.3d at 1092, which was relied upon by the court in Ferry.  See Ferry, 457 F.3d at 1118 n.15.  In Schmitt, the Tenth Circuit reached the same conclusion as in Ferry; however, in that case, the alien filed his adjustment of status application after he was ordered removed for staying in the United States beyond his authorized time under the VWP.  Schmitt, 451 F.3d at 1093-94.

waived his right "to contest, other than on the basis of an application for asylum," see 8 U.S.C. § 1187(b)(2), his removal when he entered the United States in 1998 under the VWP.[11]  I agree with the Tenth Circuit's reasoning in Ferry and adopt it here: Because Lang filed for adjustment of status *after* he overstayed his 90-day waiver period, he waived his right to contest his subsequent removal on any basis other than asylum.  Ferry, 457 F.3d at 1128.  Lang has not sought asylum from Germany, so "that basically, is the end of the case."  Momeni, 521 F.3d at 1096.  For these reasons, I must dismiss this case for lack of jurisdiction.  See also, Sowe v. Mukasey, 2008 WL 2357757, *1 (8th Cir. June 11, 2008) (unpublished opinion dismissing for lack of jurisdiction VWP entrant's petition for review of an ICE order removing him "because he was admitted to the United States under the Visa Waiver Program (VWP) and, as a condition of entry under the VWP, he waived his right to contest removal on any ground other than an application for asylum."); Zine v. Mukasey, 517 F.3d 535, 543 (8th Cir. 2008) (quoting Ferry with approval and holding that "a VWP alien who is ordered removed because he overstayed his ninety-day authorized visit and is referred to an asylum-only proceeding has waived his right to contest that removal through an application for adjustment of

---

[11]Lang has not argued that he did not sign the Form I-94W (Nonimmigrant Visa Waiver Arrival/Departure Form) prior to being admitted into the United States under the VWP or that his waiver was unknowing or involuntary.

status . . . .") (internal quotation marks omitted); Nose v. Attorney General of the U.S., 993 F.2d 75 (5th Cir. 1993) ("Because [8 U.S.C. § 1187(b)] unambiguously states that a [VWP] alien may only apply for asylum relief as a means of contesting deportation, we conclude that § 1187(b) forbids [the VWP alien] from applying for other forms of relief from deportation."); Lacey v. Gonzales, 499 F.3d 514, 519 (6th Cir. 2007); Wigglesworth v. I.N.S., 319 F.3d 951, 961 (7th Cir. 2003).[12]

Accordingly,

**IT IS HEREBY ORDERED** that this case is dismissed for lack of jurisdiction.

A separate Judgment in accordance with this Memorandum and Order is issued this same date.

                                                     CATHERINE D. PERRY
                                                   UNITED STATES DISTRICT JUDGE

Dated this 20th day of January, 2009.

---

[12]Because I find that Lang's adjustment of status application was filed outside the 90-day waiver period, I need not, and therefore do not, consider the effect of Dorsey's withdrawal of the Form I-130 she filed on behalf of Lang. In addition, I also need not decide whether I would have jurisdiction to grant the relief sought by Lang if he had filed his adjustment of status application before the 90-day period expired. However, I have serious doubts about the propriety of jurisdiction in this case -- even if the adjustment application had been timely filed -- for the reasons stated in respondents' briefs in opposition to Lang's petition for writ of mandamus.